In the

# United States Court of Appeals
## For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

_____

No. 18-2385

LARRY E. HATFIELD,

                  *Plaintiff-Appellee*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

                  *Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:16-cv-00383-JPG-RJD — **J. Phil Gilbert**, *Judge*.

_____

ARGUED APRIL 12, 2019 — DECIDED JUNE 6, 2019

_____

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. A person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" is forbidden to possess a firearm. 18 U.S.C. §922(g)(1). When holding in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), that the Second Amendment to the Constitution protects "the right of law-abiding, responsible citizens to use arms in defense of hearth

and home", the Court added that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" (*id*. at 626). *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion), "repeat[s *Heller*'s] assurances" that felon-dispossession statutes are valid. Notwithstanding these statements, a district judge concluded in this suit that §922(g)(1) violates the Second Amendment by preventing nonviolent felons from possessing guns. *Hatfield v. Sessions*, 322 F. Supp. 3d 885 (S.D. Ill. 2018). We recently held otherwise, see *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), and conclude that *Kanter* governs this appeal as well.

Kanter was convicted of mail fraud, 18 U.S.C. §1341, for bilking the Medicare program. He was sentenced to 366 days in prison. After release he contended that §922(g)(1) is invalid, as applied to him, because fraud is not a violent crime, and his conviction therefore does not portend misuse of firearms. We rejected that contention—not just because it appears to be inconsistent with the Supreme Court's statements but also because fraud is a thought-out crime that demonstrates disdain for the rights of others and disrespect for the law. Whatever may be true of spontaneous or victimless crimes, a person convicted of fraud is not the sort of law-abiding, responsible citizen to whom *Heller* referred.

Hatfield contends that his crime is less serious than Kanter's because he was sentenced to three years' probation rather than imprisonment. That's true, but the kind of crime is the same: fraud to get federal benefits to which the applicant was not entitled. Hatfield applied for and received benefits from the Railroad Retirement Board, representing that he was unemployed. In fact he was still working. His false

statements violated 18 U.S.C. §1001(a). Hatfield's fraud cost the federal government less than $2,000 (at least, the single count of conviction specified a wrongful gain of only $1,628), while Kanter's fraud cost federal taxpayers at least $375,000 and probably a good deal more. (Kanter agreed to a civil settlement of $27 million.) But both crimes were carried out over six or more months and reflected studied efforts to avoid legal obligations. The maximum penalty for each crime was at least five years in prison, well over the one-year line drawn by §922(g)(1).

We grant that some judges in *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc), thought that a nonviolent felon who did not serve time in prison could mount a successful challenge to §922(g)(1), although perhaps a single day in prison would be enough to defeat such a claim. *Kanter* did not have to decide whether to follow that approach, which lacks the support of any other circuit (or even a majority in *Binderup*). *Kanter* collects decisions from many circuits holding that §922(g)(1) is valid and properly applied to a variety of crimes and offenders. We now hold that §922(g)(1) may be applied to a felon convicted of fraud, whose maximum sentence exceeded a year, even if the actual punishment was less. *Heller* and *McDonald* treat felon-dispossession statutes as valid; the Justices did not make anything of how much time any given felon spent in prison.

Congress has been of two minds about the sort of argument Hatfield advances. He says that the nature of his crime shows that allowing him to possess firearms would not pose a danger to others. A statute, 18 U.S.C. §925(c), provides that the Attorney General may lift the firearms disability for a person who makes such a demonstration. But since 1992

Congress has withheld funds to implement §925(c). See *United States v. Bean*, 537 U.S. 71 (2002). Hatfield maintains that this renders §922(g)(1) invalid. We rejected a similar argument in *Kanter*, and it is no stronger now.

Hatfield's premise—and the premise of §925(c)—is that it is possible to separate persons with felony convictions into two categories: dangerous and harmless. If that belief were supported by evidence, then the contention that failure to implement the statute creates a constitutional problem would have some oomph. If we could know reliably who *will be* "law-abiding, responsible citizens" despite felony convictions, the Supreme Court might include them among those protected by the Second Amendment. But Hatfield's brief does not show or even contend that it is possible to predict a felon's future dangerousness.

Data show different propensities to commit crimes but do not supply any way to predict who will commit those crimes. A study recently released by the Sentencing Commission found that 64% of felons who committed violent crimes are arrested for renewed criminality following release, while only 40% of those convicted of nonviolent offenses are caught committing crimes in the future. *Recidivism Among Federal Violent Offenders* 3 (Jan. 2019). So it is safe to say that Hatfield is less likely to commit new felonies than a person convicted of, say, bank robbery. Yet 40% is still a substantial recidivism rate, and without some way to know who will commit new crimes—and whether those crimes are likely to entail the threat or use of violence—it is not possible to declare that any particular felon could be entrusted with firearms. This may be why Congress withdrew funding from

the §925(c) program. No one wants to pay for a program that does not have a prospect of success.

Hatfield's brief in this court is data-free. When asked at oral argument whether he knew of any study showing that it is possible to predict future dangerousness, Hatfield's lawyer said that he did not—and added that he had not looked for one. He insisted that the Attorney General bears the burden of proving that it is *not* possible to predict felons' future dangerousness. Lawyers love to play games with burden-shifting, but Hatfield's effort to avoid the subject is unavailing. He is the plaintiff, and plaintiffs bear the burden of production and the risk of non-persuasion.

If the subject were something other than a felon-dispossession statute, the Attorney General would bear a burden of justification. Before concluding in *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc), that 18 U.S.C. §922(g)(9) is compatible with the Second Amendment, we considered data about the recidivism rates of persons within the scope of that paragraph. That was essential because §922(g)(9) bans the possession of firearms by persons convicted of domestic-violence misdemeanors, a kind of offense that the Justices did not mention in *Heller* or *McDonald*. And we added in *Ezell v. Chicago*, 651 F.3d 684, 703 (7th Cir. 2011), that the government must demonstrate that regulatory measures not already approved by the Supreme Court are substantially related to an important goal. But §922(g)(1) deals with felonies, and someone who wants us to carve out particular felonies (or felons) from a category that the Supreme Court has said is presumptively valid must supply an adequate basis for that distinction. Hatfield, who has not tried to show that it is possible to say whether he, and others

like him, are to a constitutionally dispositive degree less dangerous than other felons, must accept that the Supreme Court's norm applies to him. He is not entitled to possess firearms.

REVERSED

SYKES, *Circuit Judge*, concurring in part and concurring in the judgment. This case is indistinguishable from *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), which rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(1), the felon-dispossession statute, as applied to a person convicted of mail fraud, a nonviolent federal felony. Like Rickey Kanter, Larry Hatfield was convicted of a nonviolent fraud felony: making false statements to obtain federal benefits, 18 U.S.C. § 1001(a). He sued for relief from § 922(g)(1), raising a similar as-applied Second Amendment challenge. A district judge was persuaded and granted relief, but that was before our decision in *Kanter*.

In its first three paragraphs, the majority opinion succinctly explains why *Kanter* requires us to reverse. Majority Op. at pp. 1–3. I agree and would end the discussion there. But my colleagues go well beyond a straightforward application of *Kanter*, reading the Supreme Court's dicta in *District of Columbia v. Heller*, 554 U.S. 570, 626–27, n.26 (2008)—that the opinion should not be understood to cast doubt on "presumptively lawful regulatory measures" such as felon-dispossession laws—as lifting the government's burden of justification in as-applied challenges to § 922(g)(1), including as-applied challenges by persons convicted of nonviolent felonies.

That's incorrect under the law of this circuit. *Kanter* assumed that nonviolent felons are within the scope of the Second Amendment's protections and applied intermediate scrutiny, requiring the government to demonstrate that disarming someone like Rickey Kanter—a person convicted of a nonviolent fraud felony—is substantially related to an important public-safety interest. 919 F.3d at 447–50. Indeed,

*Kanter* explicitly held that "[t]he government has met its burden in this case." *Id.* at 448. That holding applies here because Hatfield too was convicted of a nonviolent fraud felony and his case is not meaningfully different. It's enough to say that and be done.

My colleagues go much further, departing from the law of this circuit and altering our framework for resolving Second Amendment challenges—the very framework *Kanter* faithfully applied. My colleagues hold that in an as-applied challenge to a felon-dispossession law, the plaintiff "bear[s] the burden of production and the risk of non-persuasion." Majority Op. at p. 5. That's precisely the opposite of the approach taken in *Kanter*—indeed, in all of our post-*Heller* Second Amendment cases. 919 F.3d at 447–50; *see, e.g.*, *United States v. Meza–Rodriguez*, 798 F.3d 664, 672–73 (7th Cir. 2015); *Ezell v. City of Chicago*, 651 F.3d 684, 701–03 (7th Cir. 2011); *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010); *United States v. Williams*, 616 F.3d 685, 692–93 (7th Cir. 2010); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010).

The majority takes this approach based on that now-famous dicta from *Heller* about "presumptively lawful regulatory measures." But that passage was entirely unexplained and is hard to reconcile with the rest of the Court's opinion. At most (and most plausibly), the passing reference to the "presumptive" validity of felon-dispossession laws implies that § 922(g)(1) is not facially unconstitutional. To say that a law is "presumptively" valid leaves open the possibility of as-applied challenges, and the *Heller* dicta sheds no doctrinal light on how to deal with an as-applied challenge to a law prohibiting firearm possession. To date,

that's how we've read this unelaborated language from *Heller*, as the cases I've just cited show.

I see no reason to change course. We haven't been asked to do so here. The government did not argue that Hatfield has the burden of production and risk of nonpersuasion. Rather, the government argued that (1) felons as a class are categorically outside the Second Amendment right; and (2) alternatively, it has satisfied its burden of justification under the intermediate standard of scrutiny. This way of framing the analysis is consistent with circuit law, as *Kanter* itself reflects. There the panel discussed but did not decide the step-one question and instead proceeded directly to step two, applying our established framework and rejecting the as-applied challenge under intermediate scrutiny.

We should simply apply *Kanter*'s holding without further comment. It's not necessary to say more. Breaking new doctrinal ground is especially unwarranted when the appeal is conclusively resolved by existing circuit precedent and no one has sought any change in circuit law. As it stands, most of the majority opinion—almost everything after the application of *Kanter*—essentially describes rational-basis review, which the Supreme Court has *expressly ruled out* in Second Amendment cases. *Heller*, 554 U.S. at 628 n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."). Whatever else we might attribute to *Heller*'s enigmatic dicta about "presumptively lawful" firearm regulations, we cannot read it to say something that directly contradicts the Court's clear and emphatic instruction that rational-basis review does not

apply. Accordingly, I join the majority's application of *Kanter* and its decision to reverse, but that is all.

*Kanter* controls and resolves this appeal in its entirety. For that reason—and no others—we must reverse.